**2015-1286**

In The
# United States Court Of Appeals
# For The Federal Circuit

## AIP ACQUISITION LLC,

*Appellant,*

v.

## LEVEL 3 COMMUNICATIONS, LLC,

*Appellee.*

**ON APPEAL FROM THE PATENT AND TRADEMARK OFFICE,
PATENT TRIAL AND APPEAL BOARD
IN SERIAL NO. IPR2013-00296**

———————————

**REPLY BRIEF OF APPELLANT**

———————————

**Chi Eng
(chi@englawfirm.com)
ENG LAW FIRM
Newark Gateway Center
One Gateway Center, Suite 2600
Newark, NJ 07102
(646) 770-2347**

*Dated: June 22, 2015*                    *Counsel for Appellant*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street ♦ Suite 230 ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

# CERTIFICATE OF INTEREST

Pursuant to Federal Rule of Appellate Procedure 26.1 and Federal Circuit

Rule 47.4, the undersigned counsel for Requester-Appellant AIP Acquisition LLC

hereby certifies that:

1.  The full names of every party or amicus represented by me is:

    AIP ACQUISITION LLC

2.  The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

    None.

3.  The parent companies, subsidiaries (except wholly-owned subsidiaries), and affiliates that have issued shares to the public, of the party or amicus represented by me are:

    None.

4.  The names of all law firms and the partners and associates that appeared for any of the parties represented by me in the Patent and Trademark Office or are expected to appear in this Court are:

    John Philips, Robert DeVoto, Karl Renner, Jason Wolffe, and Dan Smith of Fish & Richardson appeared before the Patent Trial Appeal Board in the Patent and Trademark Office below.

# TABLE OF CONTENTS

**PAGE:**

CERTIFICATE OF INTEREST ............................................................... i

TABLE OF CONTENTS ....................................................................... ii

TABLE OF AUTHORITIES ................................................................ iv

ARGUMENT ........................................................................................1

    I.     AIP Argued in Its Responses that the Proposed Combination of Kammerl and Iwami Lacks Rational Underpinning ............................1

    II.    Quoted Passages from the Evidentiary Record Are Not Attorney Arguments or New Technical Interpretations........................3

    III.   Dr. Jones's Conclusory Opinion Is Not Supported by Underlying Facts or Data Including His Cited References As Required By 37 C.F.R. § 42.65 ...........................................................4

    IV.   Dr. Jones's Expert Report Does Not Meet the Heightened Burden Required For Complex Networking Technologies .................5

    V.    The Board Cannot Reasonably Rely on Dr. Jones's Conclusory Opinion ...........................................................................7

    VI.   The Board's Reliance on Dr. Jones's Conclusory Opinion Is Not Harmless Error ..............................................................................8

    VII.  No Waiver:  Neither 37 C.F.R § 42.71(d) Nor Fed. R. Evid. 103 Requires AIP to Request Rehearing Prior to an Appeal to this Court .............................................................................................13

    VIII. Iwami Does Not Teach That Internet Protocol May Be Used For Voice Transmission in a Transit Network ....................................14

    IX.   The Board's Claim Construction of "internet protocol" is Consistent with the Distinction Between "Datagram" and "Virtual Circuit" Protocols .................................................................18

X.    ATM and Internet Are Not Recognized Equivalents for Purpose
of An Obviousness Inquiry ................................................................21

XI.    Mere Identification of Prior Art Elements Is Insufficient to
Establish Obviousness..........................................................................24

CONCLUSION ......................................................................................................25

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**PAGE(S):**

**Cases:**

*Alexsam, Inc. v. IDT Corp.*,
    715 F.3d 1336 (Fed. Cir. 2013) .......................................................... 6, 21, 24

*Centricut, LLC v. Esab Group, Inc.*,
    390 F.3d 1361 (Fed.Cir. 2004) ....................................................................6

*Graham v. John Deere Co. of Kansas City*,
    383 U.S. 1 (1966)..........................................................................................4

*In re Kahn*,
    441 F.3d 977 (Fed. Cir. 2006) .....................................................................24

*In re Rouffet*,
    149 F.3d 1350 (Fed.Cir. 1998) ....................................................................24

*In re Zurko*,
    258 F.3d 1379 (Fed. Cir. 2001) ............................................................. 21, 24

*Innogenetics, N.V. v. Abbott Labs*,
    512 F.3d 1364 (Fed. Cir. 2008) .....................................................................6

*KSR International Co. v. Teleflex Inc.*,
    550 U.S. 398 (2007)..................................................................................1, 5

*Perfect Web Techs., Inc., v. Infousa, Inc.*,
    587 F.3d 1324 (Fed. Cir. 2009) .....................................................................6

*Wyers v. Master Lock Co.*,
    616 F.3d 1231 (Fed. Cir. 2010) .....................................................................6

**Statutes:**

35 U.S.C. § 141(c) .......................................................................................13

**Rules:**

37 C.F.R. § 42.64(c) ................................................................................7

37 C.F.R. § 42.65(a) ...................................................................... 7, 8, 21

37 C.F.R. § 42.71(d) ......................................................................... 13, 14

37 C.F.R. § 90 ...................................................................................13

Fed. R. Evid. 103(b) ......................................................................... 13, 14

**ARGUMENT**

## I.     AIP Argued in Its Responses that the Proposed Combination of Kammerl and Iwami Lacks Rational Underpinning

Level 3 contends in the Appellee's Brief that AIP's challenges to the Board's factual findings are based on arguments that were never presented to the Board. Appellee's Brief at 35. But the record shows otherwise.

In its Preliminary Response, AIP argued that Level 3 failed to articulate "a rational underpinning" for the proposed combinations including Kammerl and Iwami. A240-241, Prelim. Resp. at 1-2. AIP stated that "rejections on obviousness cannot be sustained by mere conclusory statements; instead, there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness" (citing *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007)). *Id.*

Level 3 argued in its Petition, as it does in the Appellee's Brief, that the proposed combination would have allowed "Kammerl's voice communications to be transmitted on networks other than ATM networks" because the Internet Protocol was "developed to allow internetworking of diverse networks." A130, Petition at 49; Appellee's Brief at 27. AIP countered in its Preliminary Response that "sending the voice signals as IP packets over the ATM network does not perform any type of internetworking function, as the IP packets are merely transported intact across the ATM link and extracted on the other side." A295-

296, Prelim. Resp. at 56-57. In its Patent Owner Response, referring to Level 3's assertion of the benefit of internetworking of the proposed combination, AIP reiterated that "this naked assertion is not supported by any evidence (other than an accompanying, uncorroborated assertion by the Petitioner's expert) or analysis of how this internetworking benefit would actually be achieved." A366, Patent Owner Resp. at 44.

At the Oral Hearing, AIP again argued that there is no evidence on the record that an ordinary artisan would combine Kammerl and Iwami because a person having ordinary skill in the art ("PHOSITA") would not expect it to work. A528-529, Trial Tr. 70:21-71:4 ("JUDGE LEE: I think what you -- I'm gathering that your correct argument is that one with ordinary skill in the art simply would not do it because they don't -- would not expect it to work. Is that fair? MR. RENNER [AIP counsel]: It is fair. And we believe that the Petitioner bore the burden of establishing that they indeed would do it. We don't think they've satisfied that burden at the end of the day.")

Thus, AIP did not waive its arguments that a PHOSITA would not be motivated to combine the Kammerl and Iwami references and that Level 3 failed to provide the requisite evidence to support a finding of obviousness. The record shows that AIP consistently argued against the combinability of Kammerl and Iwami throughout the proceedings below.

## II.    Quoted Passages from the Evidentiary Record Are Not Attorney Arguments or New Technical Interpretations

Level 3 contends that AIP's description of the prior art in the Appellant's Brief constitutes new technical interpretations of the prior art or attorney arguments. Appellee's Brief at 35, 36, 39, 41, 42.  AIP disagrees.  AIP respectfully submits that passages or excerpts from prior art references of record are factual evidence constituting the state of the art at the time of the invention of the '879 patent, not new technical interpretations or attorney arguments. Appellant's Brief at 5-19. Moreover, Level 3 cannot claim that it is prejudiced by its own submitted prior art reference, e.g. the Ramteke reference (A0989), which was repeatedly relied on by its expert, Dr. Jones.  See, e.g., A601, A602, A614, A623, A630, A643, A654, A666, A698, Jones Declaration, ¶21-24, ¶48, ¶65 n. 9, ¶78, ¶108, ¶127, ¶152, ¶223.  In fact, Dr. Jones expressly cited p. 384 of the Ramteke reference containing the passage disclosing that "With Ethernet, the range of a LAN can be extended from 500 meters to 2500 meters by placing up to four repeaters."  A602, Jones Decl., ¶24; A0989, Ramteke.  As for another example, the Perlman treatise – also cited by Level 3 in the proceedings below – describes the two common models of internetworking: virtual circuit and datagram.  A1225-A1226.  This background information is useful in evaluating whether there is rational underpinning for the Board's conclusion that a PHOSITA would be motivated to combine the virtual circuit ATM network of Kammerl with the local area network (LAN) of Iwami.

3

Importantly, a careful review of the prior art technology in the evidentiary record is necessary to determine the scope and content of the prior art at the time of the invention of the '879 patent. *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966).

### III. Dr. Jones's Conclusory Opinion Is Not Supported by Underlying Facts or Data Including His Cited References As Required By 37 C.F.R. § 42.65

Level 3 asserts that AIP contends for the first time on appeal that the Board should have considered Weinstein-Forgie and U.S. Patent No. 5,608,786 to Gordon ("Gordon") before reaching its obviousness conclusion. Appellee's Brief at 37. But AIP did not cite these references for consideration by the Board. It was Dr. Jones who cited and relied on these references in his expert report in support of his invalidity analysis of the '879 patent. A593-A594, Jones Declaration ¶3.

Dr. Jones stated in his expert report that he provided "technical review, analysis, insights, and opinions" regarding Weinstein-Forgie and Gordon references, among other references cited as prior art to the '879 patent. A595, Jones Declaration, ¶5. AIP respectfully submits that the prior art references cited by Dr. Jones should be evaluated to determine the basis for his conclusory opinion that the "Internet Protocol as taught by Iwami could be used over the ATM network taught by Kammerl" and that "an internet protocol network is one of a

finite number of identified communications mechanism that were well known at the time." A700-A701, Jones Decl., ¶227, 229.

Upon careful review of his cited references, it is respectfully submitted that none of the references relied on or cited by Dr. Jones supports his conclusory opinion that discloses the use of Internet Protocol for real-time voice transmission in a transit network. For example, the Weinstein-Forgie reference teaches that "IP is used primarily in call setup situations, and ST is used for speech transport." A0949. The Gordon reference teaches a system for receiving voice mail, email, facsimiles, and other message types that can be retrieved by a subscriber such that data communication networks such as the Internet can become global voice mail and facsimile mail systems. A0808, Abstract. Neither reference teaches the use of an IP transit network for voice transmission.

Therefore Dr. Jones's conclusory opinion concerning the combinability of Kammerl and Iwami is not supported by any of his cited references including the Weinstein-Forgie and Gordon references.

## IV. Dr. Jones's Expert Report Does Not Meet the Heightened Burden Required For Complex Networking Technologies

Level 3 argues that the Board in its obviousness analysis can "take account of the inferences and creative steps that a person of ordinary skill in the art would employ" (citing *KSR*, 550 U.S. at 418). Appellee's Brief at 24-25.

This Court in *Perfect Web Techs., Inc., v. Infousa, Inc.*, 587 F.3d 1324, 1329 (Fed. Cir. 2009) has stated:

> While an analysis of obviousness always depends on evidence that supports the required Graham factual findings, it also may include recourse to logic, judgment, and common sense available to the person of ordinary skill that *do not* necessarily require explication in any reference or expert opinion." (emphasis added)

But in a case involving complex technology, this Court in *Alexsam, Inc. v. IDT Corp.*, 715 F.3d 1336, 1348 (Fed. Cir. 2013) has stated that:

> Expert testimony was required not only to explain what the prior-art references disclosed, but also to show that a person skilled in the art would have been motivated to combine them in order to achieve the claimed invention.

See also, *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1240 n.5 (Fed. Cir. 2010) ("As we noted in *Centricut*, 'expert testimony regarding matters beyond the comprehension of laypersons is sometimes essential,' particularly in cases involving complex technology." (quoting *Centricut, LLC v. Esab Group, Inc.*, 390 F.3d 1361, 1369-70 (Fed. Cir. 2004)); *Innogenetics, N.V. v. Abbott Labs*, 512 F.3d 1364 (Fed. Cir. 2008) (requiring a heightened burden of explanation in an expert report regarding motivation to combine references for a technology involving the detection and classification of hepatitis C genotypes in a biological sample).

Here, both AIP and Level 3 agreed that ordinary skill in the art requires a B.S. degree in Electrical Engineering, Computer Science, or Computer Engineering as well as about three to five years of industry experience in communications network

design and programming. (A599, Jones Decl. ¶ 17; A1512, Weinstein Decl. ¶9)
Both parties also relied on their respective experts to explain the complex
networking technologies including Kammerl and Iwami.  Moreover, Level 3 in its
Appellee Brief acknowledges that expert testimony would be needed "to confirm
that a skilled artisan's understanding comports with AIP's new assessment of the
prior art."  Appellee's Brief at 41.

Therefore, Level 3 cannot complain, on the one hand, that an expert is
required to explain how or why an ordinary artisan would be motivated to combine
Kammerl and Iwami to achieve the claimed invention, and on the other hand, argue
that common sense or an expert's conclusory opinion would suffice.

Accordingly, Dr. Jones's expert report is deficient under the heightened
standard set forth in *Alexam* and is thus erroneously relied upon by the Board as a
matter of law.

## V.     The Board Cannot Reasonably Rely on Dr. Jones's Conclusory Opinion

Level 3 argues that the Board reasonably relied on Dr. Jones's conclusory
opinion because AIP failed to file a motion to exclude Dr. Jones's conclusory
opinion pursuant to 37 C.F.R. § 42.64(c).  Appellee's Brief at 35-36. Absent such
motion to exclude, Level 3 concludes that AIP has no basis beyond attorney
argument to challenge the Board's reliance on Dr. Jones's testimony.  Appellee's
Brief at 36.  Level 3's conclusion is incorrect.  37 C.F.R. § 42.65(a) specifies that

"[e]xpert testimony that does not disclose the underlying facts or data on which the opinion is based is entitled to little or no weight." Thus, regardless of whether a motion to exclude was filed, the Board must give little or no weight to Dr. Jones's conclusory opinion pursuant to 37 C.F.R. § 42.65(a). The Board's reliance on Dr. Jones's conclusory opinion is not reasonable.

## VI. The Board's Reliance on Dr. Jones's Conclusory Opinion Is Not Harmless Error

The conclusory opinion of Dr. Jones is the predicate evidence upon which the Board's legal conclusion of obviousness was based. It is not harmless error.

The Board stated:

> We find a PHOSITA would have considered using an IP network as a transit network between two PSTNs in order to provide the benefits of simpler internetworking of diverse networks, even at the expense of potentially slower transit speeds. Ex. 1002 ¶ 227. Additionally, we also find persuasive Petitioner's contention that "an internet protocol network [was] one of a finite number of identified communications mechanisms that were well-known at the time." Id. ¶ 229. Thus, even if a PHOSITA would have considered the benefits of using IP as a protocol for a transit network between two PSTNs to not be worth the tradeoff in transit time, the Petition establishes that modifying Kammerl to use an internet protocol as taught by Iwami would have been obvious to that PHOSITA. Therefore, we find Petitioner has demonstrated by a preponderance of the evidence that one of ordinary skill in the art would have combined Kammerl and Iwami and that the combination of Kammerl and Iwami teaches the subject matter recited in claims 1–7 and 15.

(A20, Board Decision)

8

"Ex. 1002, ¶ 227 and 229" cited above are the core factual findings of the Board upon which the legal conclusion of obviousness is based. "Ex. 1002, ¶ 227 and 229" are the conclusory statements of Dr. Jones. See A700-A701. Therefore, the Board's reliance on an expert's conclusory opinion is not harmless error.

None of the prior art references in the evidentiary record discloses or teaches the use of Internet Protocol for voice transmission in a transit network. As AIP argued at trial, "[d]espite Level 3, as well as the other Petitioner, Cisco, scouring the earth for prior art, they were never able to find a patent or reference that disclosed a situation where you used IP as a bridging network between PSTN-to-PSTN calls." A496-A497, Hearing Tr. 38:23-39:3. Although Iwami teaches the use of Internet Protocol in a LAN, Iwami does not teach that its internet protocol for voice transmission in a LAN may be used in Kammerl's ATM transit network. There is also no substantial evidence that an ordinary artisan would be motivated to replace Kammerl's ATM protocol with Iwami's internet protocol or to replace Kammerl's ATM network with Iwami's LAN.

AIP's expert, Dr. Weinstein, indicated that Internet protocol was generally "becoming of prominence" (i.e., not yet "ubiquitous" or prominent). A1145, Weinstein Tr., 16:24-17:10. However, Level 3 did not identify any of his testimony indicating that the use of internet protocol for voice transmission *in a*

9

*transit network* was also "becoming of prominence," commonplace or well-known.  See Appellee's Brief at 9, 38.  Level 3 also did not identify any factual evidence demonstrating that a PHOSITA would be motivated to use Iwami's Internet protocol in a LAN for voice transmission in Kammerl's ATM transit network.

Dr. Weinstein indicated that one may run "different things above the IP" such as TCP.  A1149, Weinstein Tr., 31:8-21. He later explained that within the TCP/IP protocol suite the TCP protocol is layered on top of the IP protocol, a connectionless datagram protocol.  A1146-1147, Weinstein Tr., 19:11-20:10.  But he did not state that this would allow "users across the Internet to run 'different things' over a variety of different networks" as represented by Level 3.  Appellee's Brief at 27.

Level 3, citing the Board Decision, represented that "both experts generally agreed on what the market pressures and industry needs were during the relevant time period."  Appellee's Brief at 7 (citing A18, A20 n.11).  However, AIP could not locate in the evidentiary record where either expert discussed "market pressures" or "industry needs" during the relevant time period.

Neither can AIP locate in the Board Decision where the Board made factual findings as to "market pressures" or "industry needs."  Rather, the Board found that:

10

a PHOSITA would have at least considered an internet protocol, such as the IP network disclosed in Iwami, as an obvious choice for a protocol to transmit voice data between two PSTNs.  The PHOSITA would have considered it obvious to use such a design for applications where a lower quality of service was acceptable. Even if the PHOSITA would have concluded that such a design would not suffice for certain applications or would not have been commercially successful, it would have been an [sic] obvious to that PHOSITA that combining Kammerl and Iwami would result in an operable system."

(A18-A19, Board Decision)

In support of this conclusion, the Board stated in footnote 10:  "We find Patent Owner's argument that, in 1996, it was known that IP "was ill-suited for real[-]time applications like voice" supports a finding that using IP as a transit network, even if less than ideal, would have been obvious.  (A19 n.10).  AIP respectfully disagrees with this finding.  As Level 3 repeatedly points out in the Appellee's brief that an attorney argument is not evidence, AIP's argument that IP "was ill-suited for real-time applications like voice" at trial is not proper factual evidence in support of the Board's legal conclusion that using IP as a transit network for voice transmission is obvious.

In this footnote 10, the Board did not cite Iwami or Kammerl as factual evidence that IP may be used for voice transmission in a transit network.  Thus, it may be inferred that the Board implicitly agreed that neither Kammerl nor Iwami provides the requisite teaching that an IP transit network may be used for voice transmission.

11

Level 3 also represented that the "Internet Protocol ("IP") is one such protocol used to transmit voice over the Internet. (A603, Jones Decl. ¶24; A1092-140.)" Appellee's Brief a5t 9. But a review of Jones Decl. ¶24 indicates that Dr. Jones did not mention anything about voice transmission using the Internet.

Level 3 further represented that "VoIP technology finally became commercially viable in the 1990s. (A599, Jones Decl. ¶18; A1512-13, Weinstein Decl., ¶¶10-11.)" Appellee's Brief at 9. But in Jones Decl. ¶18, Dr. Jones only stated that a "particular way of transporting voice over data networks is known *today* as Voice over Internet Protocol (VoIP) and is ubiquitous." (emphasis added).

Level 3 further represented that "It was only natural to packetize this voice data and use the Internet for transmitting voice communications. (A1512-13, Weinstein Decl. ¶¶10-11.)" But a review of Weinstein Decl. ¶¶10-11 indicates that Dr. Weinstein was discussing the migration of voice services to a B-ISDN architecture that utilizes ATM protocol.

Accordingly, the evidentiary record cited by Level 3 does not support a finding of motivation to combine Kammerl and Iwami to achieve the claimed invention in the manner proposed by Level 3 and adopted by the Board in its Final Decision.

## VII.  No Waiver:  Neither 37 C.F.R. § 42.71(d) Nor Fed. R. Evid. 103 Requires AIP to Request Rehearing Prior to an Appeal to this Court

Level 3 argues that AIP should have requested "rehearing of the Board's Final Decision – which would have given the Board an opportunity to consider whether it 'misapprehended or overlooked' any issue of fact or law materially impacting its final decision."  Appellee's Brief at 41-42.  AIP respectfully submits that 37 C.F.R. § 42.71(d) does not require parties intending to appeal the Board's final decisions in *inter partes* reviews to request rehearing, i.e. reconsideration, of the Board's decisions.  The language of 37 C.F.R. § 42.71(d) clearly indicates that such recourse is *optional*:  "A party dissatisfied with a decision *may* file a request for rehearing, without prior authorization from the Board." (emphasis added) Thus, Level 3's interpretation is contrary to the explicit language of 37 C.F.R. § 42.71(d) and should be denied.  Furthermore, it is respectfully submitted that neither 35 U.S.C. § 141(c) nor 37 C.F.R. § 90 governing judicial review of the Board's decisions explicitly requires an appellant to file for a rehearing prior to an appeal to this Court.

Additionally, Fed. R. Evid. 103(b) specifies that  "[o]nce the court rules definitively on the record – either before or at trial – a party need not renew an objection or offer of proof to preserve a claim of error for appeal."  Here, the Board's Final Decision expressly and definitively adopted Dr. Jones's conclusory opinion in its Final Decision despite AIP's objections in its Preliminary Response

13

and Patent Owner Response that Dr. Jones's declaratory statements are conclusory and cannot be relied on.  A20, Board Decision at 20; A240-241, Prelim. Resp. at 1-2; A366, Patent Owner Resp. at 44.  Thus, AIP timely raised its objections to Dr. Jones's conclusory opinion and preserved its claim of error for appeal under Fed. R. Evid. 103.

For the aforementioned reasons, AIP did not waive its objections to Dr. Jones's conclusory opinion under 37 C.F.R. § 42.71(d) or Fed. R. Evid. 103.

## VIII.  Iwami Does Not Teach That Internet Protocol May Be Used For Voice Transmission in a Transit Network

Level 3 has the burden to show that a PHOSITA would be motivated to use Iwami's internet protocol in a network other than a LAN in light of the teachings of the prior art references cited by Dr. Jones.  Level 3 argues that a PHOSITA would have modified Kammerl's ATM network to use Iwami's IP protocol to achieve "simpler internetworking."  However, as was pointed out in AIP's Preliminary Response, Iwami's teaching of IP protocol for voice transmission was applied in a LAN, not in a transit network such as the Internet (as represented by Level 3 in the Appellee Brief at 19), as it performs only a single conversion of transmission.  A284-285, Prelim. Resp. at 45-46.  Therefore, Iwami does not teach that its IP protocol for voice transmission could be used in a transit network.

14

Specifically, as shown in Iwami's Fig. 1 below, the communication server 20 of Iwami does not perform a first conversion of a transmission followed by a second conversion of the converted transmission into a further format, as required by claim 1 of the '879 patent. A284, Prelim. Resp. at 45. The communication terminals 10 include a LAN communication controller 14 for interfacing with the LAN 1, but do not include any component for interfacing with a telephone network such as public network 3. *Id.* This further indicates that any transmission taught by Iwami between the telephone 2 and the communication terminals 10 is converted at most once, as performing a second conversion to a further format other than that used on LAN 1 would prevent the communication terminals 10 from receiving and interpreting the transmission. *Id.* Iwami does not disclose communication terminals 10 communicating in a format other than that the format used on LAN 1. A284-285, Prelim. Resp. at 45-46. In other words, based on Iwami's disclosure, it is not readily apparent that a PHOSITA could use Iwami's LAN network topology as a transit network because it is configured to only receive and transmit calls to a PSTN telephone, not *between* two PSTN telephones. Thus, given a PHOSITA's understanding of the networking limitations of a LAN as disclosed by the Ramteke reference (A0989), Iwami does not teach that its IP protocol or its LAN would be suitable for voice transmission in a transit network.



Iwami

FIG. 1

Moreover Dr. Jones does not explain in his expert report how Iwami's internet protocol for voice transmission in a LAN may be adapted for use in a transit network, given the vastly different network topologies of Kammerl and Iwami. Thus, Level 3 failed to provide the requisite evidence as to how or why a PHOSITA may be motivated to combine Iwami's internet protocol or LAN with Kammerl's ATM protocol or ATM transit network to achieve the claimed invention.

As diagrammatically depicted below, Kammerl's ATM network is connected to a telephone switching network (or Public Network) via an

Interworking Unit which includes a Packing/Depacking Unit (P/D) for

packing/depacking an ATM cell for transmission.  A969, Kammerl, 3:56-4:18;

A1523, Weinstein Decl. ¶46.



Kammerl discloses a network topography that may have been used by a

PHOSITA seeking to migrate circuit switched voice services onto a packet

switched network.  A1519, Weinstein, ¶34.  Kammerl teaches the implementation

of a reduced degree of packet filling in a fixed packet ATM network but

Kammerl's techniques are only applicable to such fixed length packet networks.

See A968, Kammerl, 1:64-2:6; A969, 4:49-61; A1519, Weinstein Decl. ¶33.

Like Iwami, Kammerl also does not teach how or why a PHOSITA would

be motivated to modify its network to use protocols other than ATM protocols for

voice transmission or to replace its ATM network with an IP network for voice

transmission.

In fact, as disclosed by Dr. Weinstein, ATM protocol already provides for integration of IP over an ATM network through ATM Adaptation Layer 5 ("AAL5"). A1534, Weinstein Decl., ¶78. Thus, simpler internetworking is already achieved by this ATM protocol known to a PHOSITA. Thus, the purported motivation to combine Kammerl and Iwami to provide "simpler internetworking" to achieve the claimed invention is not supported by substantial evidence.

Accordingly, Level 3 fails to demonstrate that a PHOSITA would be motivated to use Iwami's internet protocol for voice transmission in a network other than LAN.

## IX.    The Board's Claim Construction of "internet protocol" is Consistent with the Distinction Between "Datagram" and "Virtual Circuit" Protocols

Level 3 contends that the distinction between "datagram" and "virtual circuit" is precluded by the Board's claim construction of "internet protocol." Appellee's Brief at 40. In its decision to institute trial, the Board preliminarily construed the term "internet protocol"[1] as used in the claims of the '879 Patent to mean "a set of rules, instructions, or procedures relating to the format and timing of data

---

[1] Level 3 asserts that AIP does not appeal the Board's claim construction. Appellee's Brief at 8. However, both Level 3 and AIP stated at trial that claim construction is not at issue in this case. A463, Trial Tr. 5:6; A486, 28:10-11. Moreover, at trial, AIP stated that claim construction of "internet protocol" is at issue in a concurrent IPR proceeding: case number IPR2014-00247 and reserved its right to challenge the Board's claim construction in that case. A486-A487, Trial Tr. 28:11-14; 28:19-21; 29:5-10.

transmissions between two devices over the Internet, such as TCP/IP" but "does not encompass ATM and frame relay protocols." A38, Trial Decision at 15. The Board also determined that it is unnecessary to introduce the term "datagram protocol" in order to construe the term "internet protocol." A37, Trial Decision at 14.

AIP respectfully submits that the Board's preliminary claim construction of "internet protocol" is consistent with the distinction between "datagram" and "virtual circuit." As explained in AIP's opening brief, ATM and Frame Relay protocols are virtual circuit protocols as understood by a PHOSITA at the time of the invention of the '879 patent. Appellant's Brief at 11; see also A1539, Peterson. As was also explained, Internet protocol IP is a datagram protocol. Appellant's Brief at 13. Thus, the Board's claim construction of "internet protocol" as used in the '879 patent is consistent with a PHOSITA's understanding of the difference between datagram protocol such as Internet Protocol IP and a virtual circuit protocol such as an ATM protocol. A1225-28, Perlman.

Level 3 represents in its brief that "AIP's own expert agreed that TCP/IP possesses the connection-oriented and guaranteed reliable sequenced delivery features of a virtual circuit." Appellee's Brief at 41. This representation is inaccurate. A review of the passage of the deposition transcript cited by Level 3 in support of its representation reveals the following exchange between Level 3 counsel and Dr. Weinstein:

Q.    Transmission control protocol is guaranteed reliable sequence delivery, is it not?

A.    Yes, and I don't deny that they have similar goals in certain respects, but they are entirely different implementations.

Q.    Well, in fact, IP is a datagram protocol; right?

A.    Yes.

Q.    And certainly ATM is a connection-oriented service; right?

A.    Yes, it is. A virtual circuit is an example of a connection-oriented service. Not the only possibility.

(A1168, Weinstein Dep. Tr., 108:13-109:23)

Thus, Dr. Weinstein distinguished Transmission Control Protocol (TCP), a connection-oriented service, from Internet Protocol (IP), a datagram protocol. Dr. Weinstein also clarified that a virtual circuit and TCP are different exemplary implementations of a connection oriented service. In light of this distinction, it is inaccurate for Level 3 to represent that *"TCP/IP"* possesses the connection-oriented and guaranteed reliable sequenced delivery features of a virtual circuit. That was not Dr. Weinstein's testimony.

AIP does not seek "to distance itself on appeal from statements made by its own expert." Appellee's Brief at 41. Rather, AIP agrees with Dr. Weinstein's differentiation of TCP, virtual circuit, and IP.

Therefore, the virtual circuit and datagram distinction is an important factor in the determination of whether a PHOSITA would be motivated to combine Kammerl and Iwami in the manner proposed by Level 3 and adopted by the Board

in its Final Decision. This distinction is widely accepted and explained in the various treatises including the Ramteke treatise which was cited and relied upon by Dr. Jones in his expert report. See A985, Ramteke, Section 13.1.3 (distinguishing X.25's use of a virtual circuit from TCP/IP's use of datagrams). Inexplicably, Dr. Jones failed to describe such an important distinction in his expert report or why and how a PHOSITA would be motivated to replace a virtual circuit ATM network with a datagram style IP transit network. Without this explanation, it is respectfully submitted that Dr. Jones's conclusory opinion does not support a finding of obviousness pursuant to 37 C.F. R. § 42.65(a) or under the standards set forth by this Court in *Alexsam,* 715 F.3d 1336, 1348 (Fed. Cir. 2013) and in *In re Zurko*, 258 F.3d 1379 (Fed. Cir. 2001) (admonishing the use of unsupported opinions or conclusory assertion of facts).

## X.   ATM and Internet Are Not Recognized Equivalents for Purpose of An Obviousness Inquiry

Level 3 argues that ATM and Internet are "interchangeable" according to the '879 Patent, citing Fig. 8 of the '879 patent. Appellee's Brief at 15-16. But this section of the '879 patent cited by Level 3 actually discloses an inventive aspect of the '879 patent concerning *incompatible* communication networks. According to the '879 patent: "One objective of the invention is to provide communication between otherwise *incompatible communication networks* in a manner that is *transparent to the calling party* (that is, the subscriber of the service initiating the

communication), while assuring that each service provider that renders service in routing that communication gets paid.  Preferably, the communication is routed based on the results from an evaluation of all available communication networks even though the calling party may have direct access to only one type of communication network." (emphasis added) A68; the '879 patent, 1:61-2:3.

In other words, the '879 patent advantageously allows routing of communications through incompatible networks such as ATM and the Internet in a manner that is *transparent* to the calling party.  The different network types such as ATM and Internet may appear as "interchangeable" to the calling party but they are themselves incompatible, i.e. non-interchangeable, with each other.  This is accomplished through the inventive central local node which includes: "an authorizer, converters for each communication network, a main processor and router, a main data base, compression and coding system and decompressing and decoding system."  A74, the '879 patent, 13:27-30.  "The main processor and router route the communications through appropriate converters if necessary to suit the network being utilized for routing, i.e., internet, frame relay and ATM, or digital and analog voice lines."  A74, the '879 patent, 13:58-61.  This inventive process is achieved by the system configuration shown in Fig. 8 of the '879 patent below:



FIG. 8

In sum, Level 3 once again impermissibly looks to the '879 Patent for obviousness teachings. But rather than proving ATM and the Internet are equivalents or interchangeable, Level 3 demonstrated that it misinterpreted or misunderstood the teachings of the '879 Patent: Incompatible communication network types such as ATM and the Internet are configured to route communications in a manner that is *transparent* to the calling party and the called party by the inventive central local node of the '879 patent.

23

**XI.    Mere Identification of Prior Art Elements Is Insufficient to Establish Obviousness**

This Court in *In re Kahn*, 441 F.3d 977 (Fed. Cir. 2006) (citing *In re Rouffet*,

149 F.3d 1350 (Fed.Cir. 1998) has stated:

> Most inventions arise from a combination of old elements and each
> element may often be found in the prior art. *Id.* at 1357. However, mere
> identification in the prior art of each element is insufficient to defeat the
> patentability of the combined subject matter as a whole. *Id.* at 1355,
> 1357.
>
> When the Board does not explain the motivation, or the suggestion or
> teaching, that would have led the skilled artisan at the time of the
> invention to the claimed combination as a whole, we infer that the
> Board used hindsight to conclude that the invention was obvious. *Id.* at
> 1358.

Here, the Board's core factual finding of obviousness is based on common sense or

the conclusory opinion of Level 3's expert, which, as explained in Sections III and

IV *supra*, does not meet the evidentiary requirements set forth in *In re Zurko*, 258

F.3d 1379 (Fed. Cir. 2001)  (admonishing the use of unsupported opinions or

conclusory assertion of facts) and *Alexsam Inc. v. IDT Corp.*, 715 F.3d 1336 (Fed.

Cir. 2013) (requiring a heightened burden on expert testimony to not only explain

what the prior art references disclose but also to show that a person skilled in the

art would have been motivated to combine them to achieve the claimed invention).

The motivation to combine Kammerl and Iwami, according to the Board, is to

provide the benefits of simpler internetworking of diverse networks (as asserted by

Level 3).  A20, Board Decision; Appellee's Brief at 27.  But as was pointed out by

AIP's expert, Dr. Weinstein, an ATM protocol known as ATM Adaptation Layer 5

(AAL5)[2] already provides for the integration of IP with ATM.  A1534, Weinstein

Decl., ¶78.  In contrast, Dr. Jones's testimony was silent as to AAL5 and its

benefits of providing simpler internetworking of diverse networks for ATM

networks.  Importantly, Dr. Jones fails to explain why a PHOSITA would be

motivated to replace the virtual circuit ATM network of Kammerl with an IP

transit network for "simpler interneworking" when ATM Adaptation Layer 5

already provides for the integration of IP and ATM.

Thus, as was argued in AIP's Preliminary Response, Level 3's "stated

reason in support of this combination is nonsensical."  A295-296.  Level 3's expert

has failed to provide any rational underpinning as to how or why a PHOSITA

would be motivated to replace the Kammerl ATM protocol with the Iwami Internet

Protocol – when Level 3 has not shown that ATM protocols and Internet Protocols

are recognized equivalents for voice transmission in a transit network.

## CONCLUSION

AIP did not waive its arguments that a PHOSITA would not be motivated

to combine Kammerl and Iwami to achieve the claimed invention.  Level 3's

expert's conclusory opinion was the factual finding predicate to the Board's legal

---

[2] Under the Board's claim construction of "internet protocol" AAL5 would be
excluded from the definition of "internet protocol" because it's an ATM protocol.

conclusion of obviousness.  AIP respectfully submits that the Board's reliance on such conclusory opinion was not harmless error.

For the aforementioned reasons, AIP respectfully requests this Court to reverse the Board's decision that claims 1-7 and 15 are unpatentable over Kammerl and Iwami; that claims 8, 9, and 11-13 are unpatentable over Kammerl, Iwami, and Kobayashi; that claim 10 is unpatentable over Kammerl, Iwami, Kobayashi, and Chau; and that claim 14 is unpatentable over Kammerl, Iwami, and Gordon.

Dated: June 22, 2015                                     /s/ Chi Eng
                                                        Chi Eng
                                                        Eng Law Firm
                                                        One Gateway Center, Suite 2600
                                                        Newark, NJ 07102
                                                        Email: chi@englawfirm.com
                                                        Telephone: 646-770-2347
                                                        Facsimile:  646-568-7231

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that, on this the 22nd day of June, 2015, I electronically filed the foregoing Brief of Appellant with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all registered users.

I further certify that, upon acceptance and request from the Court, the required paper copies of the foregoing will be deposited with United Parcel Service for delivery to the Clerk, UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT, 717 Madison Place, N.W., Washington, D.C. 20439.

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Melissa A. Dockery
Melissa A. Dockery
GIBSON MOORE APPELLATE SERVICES
421 East Franklin Street, Suite 230
Richmond, VA  23219

**CERTIFICATE OF COMPLIANCE**
**With Type-Volume Limitation, Typeface Requirements,**
**and Type Style Requirements**

1.    This brief complies with the type-volume limitation of Fed. R. App. P.
32(a)(7)(B) because:

      this brief contains <u>5,688</u> words, excluding the parts of the brief
exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.
32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

      this brief has been prepared in a proportionally spaced typeface using
<u>Microsoft Word</u> in <u>14 Times New Roman</u>.

Dated: June 22, 2015            <u>/s/ Chi Eng</u>
                                   Chi Eng